PENDLETON, President,
after stating the case, delivered the resolution of the Court to the following effect:
The principles, formerly established in Curry v. Burns, are well recollected and approved of by the Court. They were, that the proprietor had a right to establish such rules for granting his lands as he pleased, to which, those applying for grants, were bound to conform. That having published those rules, by sticking them up in his public office, all applicants were bound to take notice of, and comply with them, without particular notice to each individual. So, that if the lands were forfeited, he might grant them to another; and, if he did so, the grant would be good, provided, there was no fraud or deception in the person obtaining the second grant. But, if before any proceeding towards a second grant, the first defaulter applied, and performed or offered to perform, what was required, he saved the forfeiture and had a right to the grant; agreeably to the spirit of the act, relative to petitions for lapsed land, which saves the forfeiture, if the condition is performed at any time before the petition, though not within that prescribed by law.
These were, and are, the general governing principles: How they are to apply, depends upon the particular cir *167 cumstances of each case. We do not, therefore, enquire how they were applied in former instances unlike the present, but consider how they ought to operate upon the present decision.
Exclusive of the wife’s affidavit, her consent is only proved by the answer. But, that is contradicted by the evidence .in several important points; and, therefore, is deprived of that weight, which is allowed to answers by the rules of a Court of Equity. And, it is not credible, that a wife, whose husband had long been in the habit of ill-using her, even so far as to proceed to correction, would voluntarily go to a Justice of the Peace, and swear that she was desirous of transferring her estate to him, to the prejudice of her own son.
The proprietor, it is apparent, did not mean to exercise his. power of granting away this woman’s lands, for the neglect in complying with the rules of his office; on the contrary, he meant to preserve her right, and was deceived into making the grant by the oath, as an evidence of her consent.
But, was that proper evidence ?
A feme covert can’t pass her legal title without a deed, accompanied by a privy examination, to evince that she does not do it under her husband’s influence. And, I presume, a Court of Equity would require some equivalent testimony of her freedom of mind, in parting with her equitable title; which proof, is not afforded by the oath. For any thing which appears, she might be dragged before the justice, and the oath administered in the husband’s presence, under the influence of some signal terror before communicated and kept up. -For, it does not appear that- the oath was administered apart from him, or that any enquiry was privily made of her, as to her freedom of mind in what she was doing.
The novelty of the proceeding gives suspicion of fraud, which is, indeed, apparent through the whole transaction» And, the Courts below, considering him as a trustee of the legal estate, for the use of the fair and conscientious oivner, have rightly decreed a conveyance, and made him answerable for the money he received from the other entry. An objection is stated in the petition, that he only calls himself heir of the father, but not of the mother. He says, however, that he is son and heir of the father, and son of the mother, to whom the lands would have descended, but for the fraudulent deed, which is sufficient; especially, as it is not questioned by the answer.