Daniel, J.
This Court, in the case of Thornton v. Thornton, 3 Rand. 179, decided, that a conveyance to husband and wife, had precisely the same effect in laxo, as a grant to them, during the lives of both, and after the death of either, to the survivor alone. Upon the death of Mrs. Norxnan, therefore, it is clear that her husband Thomas Norman, by virtue of the patent issued to himself and wife in 1790, became invested with the legal title to the whole tract of land therein granted. An application, however, of the principles, announced in Countz v. Geiger, 1 Call 190, to the facts presented by the record in this case, makes it, I think, equally clear, that as to a moiety of the said land, the said Norman should be regarded, in eqxiitxj, as a trustee of the legal estate for the benefit of his wife’s heirs, who, if the land was still within the reach of the Court, would have a right to a decree for a conveyance thereof. The appellees, in their bill, allege that Norxnan, *71 after the death of his wife, made sale of the whole tract, by sundry conveyances, to bona fide purchasers, all of whom bought without notice of any equity affecting the title; and that the land is consequently no longer liable, either at law or in equity, to their claim; and they ask that, as Norman has thus deprived them of the power of ever coming to the possession and enjoyment of their rightful inheritance, his representative be decreed to render them compensation for their loss: and they insist, that the just measure of compensation is the value of the land at the time of Norman’s death, when, upon the expiration of his right to hold as tenant by the curtesy, they became entitled to receive the land, as heirs of their mother.
The Chancellor has sustained their claim, and has given them the relief sought. In so doing, I cannot myself perceive that he has committed any error requiring correction at the hands of this Court.
It is true that the answer does not admit that the purchasers from Norman bought without notice of the equity of the appellees; and it is argued here that the Court below erred in taking the allegations on that head, as true, without some proof. But supposing that it was incumbent on the plaintiffs below to prove a negative, and establish their allegation, what better proof is wanting, in the absence of any to the contrary, than that which appears on the very face of the transaction itself? The title which Norman undertook to convey to his vendees rested on the highest species of evidence known to the law, the Commonwealth’s patent. There was nothing upon its face to arouse the suspicions of the purchasers as to any outstanding equity. The grant of the land in question by the Commonweath to Norman and his wife, accompanied by the fact that he was the survivor of the two, presented every assurance that the most wary purchaser could ask, that the title was in all respects perfect. The purchasers were not bound to *72 arising look beyond the patent for latent defects arising from the equities of third persons. The fair inference is that they did not, and the just presumption of the law, g from the intrinsic evidence furnished by the character of the transaction itself, that they bought without notice, is all the support of the truth of such allegation, that ought to have been required, till something tending to the opposite conclusion was furnished by the appellant. Being thus cut off from all resort to the land for indemnity, the appellees were without any election. Their only remedy was to seek compensation for their loss at the hands of the representative of him whose acts had occasioned it. In giving them relief, the Court below has, I think, both as regards the mode and measure of redress, followed the rules established by the highest authority in like cases. In breaches of trust the constant effort of Courts of Equity is to restore the parties injured, as near as may be, to the position they occupied before the breaches were committed. And for this purpose, when the property has been disposed of and is capable of being followed in specie, it will compel the trustees or parties in possession, (if the latter have taken with notice of the trust,) to reconvey the estate to the purposes of the trust. If the property cannot be followed in specie, or if the holder is a bona fide purchaser without notice, and so not liable to the trust, the trustee will be decreed to compensate the cestuis que trust, by the payment of a sum equal to the value of the trust property, or by the purchase of other property of equal value for their benefit. Hill on Trustees 522.
In the case of Mansell v. Mansell, 2 P. Wms. 678, trustees for supporting contingent remainders, joining to destroy them, were declared guilty of a breach of trust, and were decreed to unite with their grantee in making to the party barred at law of his remainder by the joining of the trustees, before his birth, such an estate as he *73 would have been entitled to, had not the remainders been destroyed. And the Court declared, that had the premises been conveyed to one without notice and for a valuable consideration, such purchaser would have held the lands discharged of the trust, but that the trustees would have been decreed to purchase lands with their own money, equal in value to the lands sold, and to hold them upon the same trusts and limitations as they held those sold by them. And in the case of Hart v. Ten Eyck, 2 Johns. Ch. R. 62, an administrator, who, by exhibiting an untrue account of the personal estate of his intestate to the Court, had obtained an order for the sale of the real estate, was made to answer for the value, not at the time of the sale, but for the value of the land as it existed at the time of the filing of the bill.
In the case of Mansell v. Mansell, above cited, the Court said, that where an estate was limited to A for life, remainder to his first, &c. sons in tail, though it was a plain wrong in him to do any act which would destroy the remainders, before the birth of a son, notwithstanding his legal power to do so, a Court of Equity had no cognizance of the case; that to prevent this inconvenience, the remedy of appointing trustees had been invented; that the invention was then but of recent origin, and that there had then been no decision defining the powers and duties of the trustees in such cases. There was nothing in the case to shew that the trustees were prompted by any corrupt or improper motive, and the fair presumption was, that in joining in the conveyance to destroy the remainders, they were acting upon the belief that they had a right to do so. Yet the Court held, that the measure of compensation to which they would have been properly subjected, in case the lands had been placed beyond the reach of the Court, would have been the purchase with their own money, (though they had received nothing for their *74 conveyance,) of lands equal in value to those conveyed away. Can the representative of Norman justly complain that his breach of trust has been visited with a bke measure of retribution ? It may be that he acted upon a mistaken view of his rights : but it is clear that he was fully informed of all the facts on which those rights depended. The absence of corrupt motive on his part, does in no degree mitigate the loss to the innocent sufferers, nor justify a Court of Equity in awarding them any thing short of full compensation. He has undertaken, without any authority therefor, to dispose of the inheritance of the p'aintiffs to his own use, and I cannot see how a decree directing his representative to pay to them in lieu thereof so much money as the land was worth at the time when they became entitled to receive it, can be properly regarded as in any degree harsh or unjust. If the land had been in the power of the Court, it could not have refused to compel its restoration to the rightful owners. As without any fault or negligence on their part, it had been placed beyond the reach of the Court, how could it, upon any principle of equity, refuse to decree to them an equivalent ?
It is urged that the rule heretofore adopted by our Courts in cases of eviction, of restoring to the party evicted his purchase money, would be a proper guide for ascertaining the amount of compensation in this case. I do not think- so. The standard of damages erected in such cases is not only founded on technical and peculiar reasons, and supported by arguments of convenience wholly inapplicable here, but its justice has been heretofore vindicated by considerations, which, owing to the different position of the parties, do not present themselves in a case like the one now before us. “ Where land is sold, the existing state of things, the present value and situation of the laud, are the subjects in the minds of the parties : it *75 is this land as it now is, that is bought and sold and warranted. Is it not most natural then to suppose that the parties mean that the purchase money, the standard of value to which they have both agreed in the sale, shall be the measure of compensation if the land be lost ? They seldom look into futurity to speculate upon the chances of a rise or fall in value. If they did, the views of buyer and seller would probably be very different ; and whatever they might be, could form no part of the contract, nor enter into its construction. What is it the seller warrants ? The land itself. Does this warranty, either by force of its terms or by the intention of the parties, extend to any future value which the lands may reach when they have become the site of a populous city, are covered with expensive buildings, or mines of gold have been found in their bowels? Such a state of things was probably not dreamed of. And how can these subsequent accessions be the subject of a warranty made when they had no existence, nor were even in the contemplation of the parties ?” Carr, J. in Threlkeld’s adm’r v. Fitzhugh’s ex'x, 2 Leigh 451. The main arguments generally used in favour of restricting a purchaser in case of eviction to a recovery of the purchase money paid and received for the land lost, it must be conceded, are here urged with great force, but I cannot see how they tend in any degree to shew the justice or propriety of awarding to the appellees in this case, any such stinted measure of relief. They had nothing to do with the sale of the lands. They have no connexion with the purchasers, and claim nothing through them. They have not, by any conduct of theirs, brought themselves within the influence of the relations existing between vendor and purchaser. They have entered into no contract, from which it can be inferred" that they would in the case of a loss of their land, be content to look to any particular fixed value as the standard, by which such loss should be adjusted and *76 repaired. At the period when by the due progress of events, and the undisturbed operation of the law, they would have been entitled to enter upon the enjoyment °f real estate which had belonged to their mother, and with her title to which she had never parted, they r J found their right to do so resisted and successfully opposed. They have availed themselves, with due diligence, of the most appropriate, if not the only means of relief, a resort to a Court of Equity. Obedience to the plain dictates of justice, and conformity to its own well established rules and precedents, required that Court to decree the property to be restored j and if that could not be done without violence to the rights of innocent purchasers, to compel him from whom the injury proceeded, to make compensation, by paying to those entitled, "the present value of the land in money, with interest thereon from the time when their right to the enjoyment of the possession of the land, would, but for the wrongful alienation, have accrued. The Court below has in making its decree adopted as the period of fixing the value of the land, the time of Norman's death. Whether that or the era of the filing of the bill was the most to be preferred, it is not necessary to enquire, as there does not appear to have been any change in the value of the property between the two periods, and the former is the one selected in the prayer of the bill.
I do not perceive any force in the suggestion of error founded on the omission to make the purchasers from Norman parties to the suit. The bill did not claim, and could not with propriety claim, any thing against them; as according to its own allegations, they bought without notice. Nor do I think that it was at all necessary to examine them as witnesses, inasmuch as the only fact of importance to which they could have deposed, to wit, the want of notice, was already sufficiently established by the intrinsic evidence in the case.
*77 I concur with Judge Baldwin in the opinion that the claim of the appellees was in no wise affected, either by the will of Norman, or by the warrantees in his several deeds to the purchasers, and am of opinion to affirm the decree.
Baldwin, J. It is clear that James Tutt acquired a good equitable right to the tract of land in the record mentioned. His warrant from Lord Fairfax, his survey under that warrant, and his subsequent claim and possession, without any proceedings had for forfeiture, or any adverse claim whatever, gave him an unquestioned and unquestionable right to demand a patent from the lord proprietor, or from the Commonwealth as his successor, upon payment of the office fees and commutation money. Picket v. Dowdall, 2 Wash. 106 ; Johnson v. Buffington, Id. 116; Curry v. Burns, Id. 121; Countz v. Geiger, 1 Call 190: And no one claiming Tutt’s title, and perfecting it by patent, can make objections to its regularity, or assert an equity superior to his.
By the will of Tutt, his equitable estate in this land passed to his granddaughter, Milly Tutt, (afterwards Mrs. Norman,) and his daughter, Ann Williams, (wife of Paul Williams,) to be equally divided between them; and they consequently took not as joint tenants, but as tenants in common. If a patent had issued to them in conformity with such their equitable rights as tenants in common, (as it might, Co. Litt. 190 b,) or to them as joint tenants, (1 Rev. Code, ch. 98, § 1, p. 359, act of partitions,) Mrs. Norman’s estate in an undivided moiety would have been preserved and perfected, and would consequently at her death have descended to her heirs, subject to her husband’s tenancy by the curtesy. But by the patent which actually issued, the entire tract was granted jointly to Norman and wife, the former claiming by purchase the undivided moiety of *78 Mrs. Williams ; and consequently the legal estate vested jointly in them, not as joint tenants, nor as tenants in common ; but, according to the rule governing conveyances to husband and wife after coverture, each took the entirety, with the chance of excluding by survivor-ship the heirs of the other. Thornton v. Thornton, 3 Rand. 179. And we have to determine whether, under the circumstances, the heirs of the wife can in equity recover her undivided moiety, or if that cannot be had, compensation therefor.
There seems no reason to doubt that the husband, in obtaining the patent to himself and wife jointly for the whole tract, acted in perfect good faith, and without any design to secure an undue advantage to himself. Indeed his act might be regarded as beneficial at the time to the wife, inasmuch as it tended to secure to her, in the event of her widowhood, a more ample provision, by giving her the whole, instead of a moiety only. And it is with some regret, and after an effort the other way, I am constrained to the conclusion that the husband could not thus by his own choice place in jeopardy the certain estate of his wife. The joint patent to himself and wife resulted from his own course of conduct, for which there was no inevitable necessity. It was his own voluntary act to purchase the undivided moiety of Mrs. Williams; and moreover the suggestion in the patent of that purchase might have been avoided. His contract might have provided for obtaining the patent in the names of the, devisees, (to which their coverture would have formed.ho' impediment,) and for a subsequent conveyance rp him of the undivided moiety of Mrs. Williams. We know not whether it was by the actual consent of Mrs. Norman that the patent was so obtained as to put at risk her undivided moiety, for the chance of gaining the .whole tract by survivorship. She was, however, disabled in law from consenting to the alienation, whether certain or contingent, of her real es *79 tate, in any other mode than that which the law prescribes, to wit, upon privy examination, duly authenticated.
I cannot think we are at liberty, for the sake of sustaining a fair transaction, to break in upon the safeguards which the law throws around fames covert in regard to the alienation of their inheritance. It would be a dangerous precedent, and might lead to fraudulent practices incapable of detection. The principle could not be limited to grants from the Commonwealth, but would extend to all conveyances to husband and wife arising out of his connecting interests of his own by purchase with others belonging to his wife in the same property. The argument in this case that the payment by the husband of the office fees and commutation money was necessary for the purpose of obtaining a patent, can avail nothing on this point. However that may be, though it fully warranted the preservation, it cannot justify'the destruction of the wife’s title.
It cannot be doubted that Mrs. Norman acquired from her grandfather not merely an inceptive right to the'acquisition of a legal title, but an equitable estate in the subject, Countz v. Geiger, 1 Call 190, against which no adverse claim was, if there could have been any, asserted. Her marriage did not vest this title in her husband, who stood in relation to it upon no better footing than he would have done in regard to any other inheritance of hers, whether legal or equitable, to which she' might have succeeded dum sola. And it was not competent for him by any act of his to divest this equitable estate, and vest it in himself, whether absolutely or contingently. It was his province to perfect the title in such manner as to secure it for her benefit; or to leave it as he found it, to be perfected thereafter, if practicable, by her or her representatives. The citations for the appellant from Co. Lilt, were cases at law, and not of equitable estates in the wife before marriage, but of *80 common law assurances begun before, and finished af.terwards, which were treated as conveyances made to them during coverture.
I think, therefore, that though the patent vested the ^eSa^ esta£e of the entire tract in Norman and wife, which upon her' death survived to him alone, yet that her equitable, estate in an undivided moiety was not thereby defeated, but descended to her heirs at her death, subject however to his life estate therein as tenant by the curtesy. At his death, therefore, it is clear that if there had been no alienation of the subject by him in his lifetime, they would have had a right to recover such undivided moiety from his representatives. And we are next to consider what is the redress to' which under the circumstances they are entitled.
The remedy of a person entitled to real property against an adverse claimant is an action at law, ora suit in equity, according to the nature of the case, for the recovery of the specific property itself, and not for the recovery of its value, or of damages for the sale of it to a third person. There are cases, it is true, in which a Court of Equity will give a compensation in money, instead of requiring the party aggrieved to pursue the property into the hands of third persons. As if one fraudulently obtains and alienates the property of another, he is bound in conscience to replace the party injured, in the same or as good a condition as he found him, and if he has disabled himself by his own act from yielding retribution in kind, he cannot object to any other adequate redress against himself, and require the prosecution of a demand for the specific thing, though it might be successfully pursued, against his assignee. This is equally true in regard to an express trust, where the trustee abuses the confidence reposed in him, and converts the trust subject to his own use by the alienation of it to a stranger. The general rule is, therefore, not applicable to such cases of fraud and trust. And *81 even where there is no bad faith or breach of trust, if the equitable claimant establishes his right to the subject as against the original adverse claimant, he need not' insist upon defeating a sale of it made by the latter to a stranger, but may yield his confirmation, and take the stipulated price for remuneration.
The case before us falls within the exception last mentioned. The appellees are at liberty to waive redress quoad the specific property, (or the Court may do it for them,) confirm the sales made by their ancestor, and receive from his estate the prices paid him by the purchasers; to which the addition of interest thereupon would be proper, but for his right to enjoy the subject during his life as tenant by the curtesy.
But the claim asserted by the appellees, is not to the prices at which the property was sold, but to its value at the date of Norman's death : and they found it upon the allegation, that the sales were made to purchasers for valuable consideration, without notice of their equity, and consequently, that the property itself cannot be specifically recovered. Of this allegation, however, there is no proof: and it was incumbent upon the plaintiffs to prove it. They cannot be excused from that necessity on the ground that the want of notice is negative matter; for the obvious and regular mode of presenting the question whether the purchasers had notice, was to make them defendants. And then upon the question whether the appellees could recover compensation in damages, instead of the specific property, the denial or admission of notice by the purchasers, would have been material evidence. The plaintiffs ought, at least, upon the question of notice, to have examined the purchasers as witnesses, the bill having rendered them competent by the disavowal of any right to recover against them.
But even upon the concession that the purchasers had no notice of the equitable title of the appellees, I think *82 the proper measure of compensation to the latter is not the estimated value of the property at the time of Norman’s death, but the prices which he received when he sold to the purchasers. The last is the period at which the appellees were aggrieved; that is, the period at which they would have been entitled to redress, but for the postponement of their recovery by the subsisting tenancy by the curtesy: those prices, too, would have been the basis of compensation to the purchasers in the event of their eviction. Norman was guilty of no fraud, or breach of trust and confidence. He acted in perfect good faith in taking out the joint patent to himself and wife; and indeed with liberality towards her in thus yielding to her in the event of her survivorship, the absolute ownership of the entire tract, though the whole expense of purchasing one moiety, and of perfecting the title to both; was incurred by himself. He was mistaken as'to his equitable rights, upon a question by no means free from difficulty, but is exempt from all imputation of improper motives. He was, moreover, the ancestor of the-appellees, who would have participated in case of his intestacy,' in the succession to his whole estate, including the prices at which he sold the land in question, and he has actually made provision for them by his will. Under these circumstances, it would be a harsh measure of redress to subject him to damages beyond the value of the property at the time he sold it. And on the other hand, if there had been a deterioration in the value of the property since it was sold, there would have been no injustice in giving to the appellees the prices actually received. He who has been guilty of fraud, or wilful malversation, may be required to make re.ribution to the uttermost; 2 Crabb’s Real Prop’/, p. 651, <§> 1921; Ime v. Ivie, 1 Atk. 430; Mansrlt v. Mansell, 2 P. Wms. 678; but equity discriminates in some respects in favour of a bona fide holder, ignorant of a defect in his title, against whom equity is sought. 2 Story’s Eq. 109.
*83 1 think, therefore, that though the appellees are entitled to relief, the proper measure of it is not the estimated value of their undivided moiety of the land at Norman's death, but the prices which he received for it from the purchasers, with interest from his death.
There is nothing substantial in the defence of the appellant, that the appellees are barred by the collateral warranties of Norman in his deeds of conveyance to the purchasers. Our act 1 Rev. Code, ch. 99, $ 21, p. 368, taken from the statute of Gloucester, and extended generally to common law warranties, applies only to cases of real assets descending from the warranting ancestor, and not to personal assets, or assets, whether real or personal, accruing from him by devise or bequest.
The defence that the effect of giving relief to the appellees, is to enable them to claim as, well_against as un der the will of Norman, is equ claim nothing against his will, ject applies only where the thi or bequeathed away to anotln not the case here, either as to f ceeds.
Brooke, J. concurred with Daniel, J.
Cabell, P. was of opinion to reverse the decree and dismiss the bill. Had he thought that any relief should be granted, he would have given that measure of relief indicated by the opinion of Judge Baldwin.