# Richmond

COMMONWEALTH OF VIRGINIA V. JOHN E. ROSE, JR.,
COMMISSIONER OF REVENUE.

March 16, 1933.

Present, All the Justices.

The opinion states the case.

*John R. Saunders, Attorney-General,* and *Edwin H. Gib-*

*son* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

*E. C. Folkes, James E. Cannon* and *Wellford & Taylor,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action brought by the Commonwealth to recover compensation alleged to be excessive, received by Rose as commissioner of revenue for the city of Richmond for the year 1930.

The issue is well stated in appellant's brief:

"Was the commissioner of the revenue of the city of Richmond, hereinafter referred to as the commissioner, entitled to retain only $2,500.00 per annum of the commissions allowed him by the city of Richmond for performing local services, and was he required by the West fee bill, as amended by Acts 1926, page 350, to pay into the State treasury all such commissions collected by him in excess of that amount? In other words, is the local remuneration which the commissioner was entitled to retain limited to the sum of $2,500.00?"

By an act of the General Assembly, approved March 18, 1926, ch. 198, the maximum compensation to commissioners of revenue in cities having a population of 100,000 or more was to be $10,000—$7,500 from the State, with permission to cities to supplement it by a sum not in excess of $2,500. Receipts in excess thereof were to be recaptured, and two-thirds of such recaptured fund was to be returned to the city.

If this is the present law, then the State's position is sound.

By an emergency act, approved March 24, 1926, the city of Richmond was given a new charter (ch. 318). In section 58 of that charter is this provision: "The city council of the city of Richmond, on recommendation of the comp-

troller, may fix the compensation of the commissioner of revenue for services rendered the city."

It is not easy to understand how this statement could be misunderstood. To fix compensation is to name it. Compensation for local service has been properly fixed. The commissioner has taken no more than the city has given. He must be sustained if the city had power to give. Before taking anything he consulted the city attorney, Honorable James E. Cannon, and followed his advice. This opinion the trial court has sustained.

No one has questioned the power of the State to fix compensation which these commissioners are to receive. This it may do by a general law or by a charter provision. See sections 117 and 119 of our Constitution.

The legislature, by an act approved March 28, 1928 (ch. 510), again undertook to deal with the compensation to be paid to these officers, but in section 3 said: "This act shall apply to the compensation of commissioners of the revenue on and after the first day of January, nineteen hundred and twenty-eight. It shall not apply to commissions on the assessment of license taxes, nor shall it apply to fees; nor shall this act apply to any city whose council, by virtue of power and authority conferred by the charter of such city, prescribes the salary or other compensation of the commissioner of the revenue for services rendered to such city in relation to its revenues."

General laws are superseded by later charter provisions, which are themselves statutes, to the extent that there is a conflict. *Fonticello Co.* v. *Richmond,* 147 Va. 355, 137 S. E. 458; *Chambers* v. *City of Roanoke,* 114 Va. 768, 78 S. E. 407.

Much has been said about the West fee system, its vicissitudes and the policy of the State. Its policy is written in its latest governing statutory declarations.

It is said that repeal by implication is not favored, and that statutes apparently in conflict are to be reconciled when possible. These are propositions at this late date not

questioned; but where the implication is inevitable it has all the force of an express declaration. Circumstantial evidence may be quite as convincing as direct testimony. But to make assurance doubly sure the charter itself, in its last section, declares that, "all acts and parts of acts in conflict with this charter, or any provision thereof, be and the same are hereby repealed," etc.

██ Unless words are smoke screens, a statement to the effect that a city shall not pay its commissioner of revenue more than $2,500, followed by a later enactment to the effect that it may fix his compensation, leads to the inescapable conclusion that the first limitation is superseded.

Quite in point is the *Chambers Case*. In it we find a general statute which said that cities should not tax farmers selling their own products. Later the charter of Roanoke was amended and, as amended, authorized a curb tax. This amendment was upheld. Moreover, section 3 of the act of March 28, 1928, in express terms, preserves to cities charter privileges theretofore granted.

It is immensely important that cities should supervise and retain control of local assessments, and that they should have power to properly compensate efficient officials. The city's interest is even greater than that of the State, and yet the act of 1926, relied upon, gives for State services $7,500 and allows for local services only $2,500. The Governor, in discussing the compensation to be paid to the State Tax Commissioner, said with force: "I make a distinction between tax-producing and tax-consuming departments."

██ The history of legislative dealings with compensation to officials has been discussed at length. It is interesting but has no value except in doubtful cases. This is not such a case. The State, by statute, has given to the city in its charter, in words as clear as our language offers, power to say what it will pay to its commissioners of revenue. That declaration cannot be overridden so long as law requires us to give a plain meaning to plain words.

The judgment appealed from must be affirmed, and it is so ordered.

*Affirmed.*

HUDGINS, J.:

The law as Mr. Justice Epes and I conceived it to be was contrary to the interpretation contained in the foregoing opinion, but in this case we yield to the majority view.