[No. 6635–1. Division One. October 1, 1979.]

PUBLIC HOSPITAL DISTRICT NO. 1 OF KING COUNTY, *Respondent*, v. THE STATE OF WASH-INGTON, ET AL, *Appellants*.

*Slade Gorton, Attorney General,* and *James K. Pharris, Assistant,* for appellants.

*Pain & Warren* and *John K. Pain, Jr.,* for respondent.

ANDERSEN, J.—

FACTS OF CASE

The State Auditor having claimed reimbursement for what he considered were overpayments of compensation made to the commissioners of Public Hospital District No. 1 of King County, the district sought and obtained a declaratory judgment from the Superior Court holding that the questioned payments were proper. The auditor appeals. We affirm.

An agreed statements of facts was filed by the parties. RCW 4.52.010. The agreed facts are as follows.

1.

R.C.W. 70.44.050 provided in part, until amended by Chapter 42, Laws of 1975, as follows:

"A District may provide by Resolution for the payment of compensation to each of its Commissioners *at a rate not exceeding Twenty Five Dollars ($25.00) for each day or major part thereof* devoted to the business of the District, and days upon which he attends meetings

of the Commission of his own District, or meeting attended by one or more Commissioners of two or more Districts called to consider business common to them, except that the total compensation paid to such Commissioner during any one year *shall not exceed $600.00. . . ."*

2.

By Chapter 42, Laws of 1975, R.C.W. 70.44.050 was amended, effective June 12, 1975, to provide in part:

"A District may provide by Resolution for the payment of compensation to each of its Commissioners *at a rate not exceeding Twenty Five Dollars ($25.00) for each day or major part thereof* devoted to the business of the District, and days upon which he attends meetings of the Commission of his own District, or meetings attended by one or more Commissioners of two or more Districts called to consider business common to them, except that the total compensation paid to such Commissioner during any one year *shall not exceed $1,200.00. . . ."*

3.

Article XXX, Section 1, of the State Constitution, Amendment 54, approved November *15,* 1968 and entitled "Authorizing Compensation Increase During Term" provides in part:

"The compensation of all elective and appointive State, County, and Municipal officers *who do not fix their own compensation,* including Judges of Courts of record and the Justice Courts, may be increased during their term of office to the end that such officers and Judges *shall each severally receive compensation for their services in accordance with the law in effect at the time the services are being rendered . . ."*

4.

On the 15th day of May, 1975, the then Board of Commissioners of Public Hospital District No. 1 of King County (Harriet Gruhn, Charlotte Cooper, E. R. Coleman, C. P. Curran, and Leo Powers) adopted Resolution No. 192, to be effective June 12, 1975, providing that the Commissioners be entitled to $25.00 a day per day or major part thereof devoted to the business of the District, and days upon which Commissioners attended meetings of their own District, etc., to a maximum of

$1,200.00 per year all as provided in Chapter 42, Laws of 1975.

5.

Subsequent to June 12, 1975, and for the year 1976, compensation was paid to the District's Commissioners in accordance with the $1,200.00 figure fixed by the Legislature in its 1975 Session.

6.

The Auditor of the State of Washington in its financial–fiscal Examination of the District's affairs for the year ending December 31, 1976, dated March 4, 1977, concluded that the compensation of Hospital District Commissioners was not fixed by the Legislature, but rather, by the Commissioners themselves; that the Commissioners were thus not entitled to increases in the maximum compensation during their respective terms of office; and requested that the Commissioners reimburse the District for "over payments" . . .

7.

Commissioner Gruhn, an appointee, faced Dr. John Shields in the general election of 1975 for an unexpired four–year term. Dr. Shields won that election and took office as a Commissioner of the District in January, 1976.

8.

The District responded to the Auditor's 1975 Examination Report to the effect that the Commissioners' compensation was fixed by the Legislature, and that by the terms of Article XXX, Section 1, of the Washington State Constitution (Amendment 54), an increase in the maximum compensation of Commissioners during their term was permitted; and that the District would thus not seek reimbursement from the Commissioners specified in the Auditor's 1975 Examination Report.

9.

Counsel for the State of Washington in turn responded in writing reiterating the State's position that the District's Board of Commissioners had, contrary to law, increased their compensation during their respective current terms of office, and that if the District within thirty (30) days did not reconsider its action a suit would be filed against the Commissioners named in the aforementioned Examination Report to recover what the State considered unconstitutional increases in their compensation.

10.
Thereafter, Counsel for plaintiff and defendants agreed to a Resolution of the issue of the Commissioners' compensation through institution of a Declaratory Judgment Action by the District.

(Italics ours.)

One issue is determinative.

ISSUE

For constitutional purposes, are public hospital district commissioners officers who fix their own compensation, in which case there could be no increase in that compensation during the terms of the incumbent commissioners? *See* Const. art. 30, § 1; art. 2, § 25 and art. 11, § 8.

DECISION

CONCLUSION. The legislature, by its enactment of Laws of 1975, chapter 42, section 1, amending RCW 70.44.050, fixed the upper limit of compensation for commissioners of public hospital districts. In that respect, therefore, the commissioners did not "fix their own compensation" within the contemplation of Washington constitution article 30, section 1 and there was no constitutional bar to midterm adjustments of their maximum allowable yearly compensation as established by the legislature.

The 1975 amendment to RCW 70.44.050 (Laws of 1975, ch. 42, § 1, p. 71) did not change the $25 maximum daily compensation rate for hospital district commissioners. The record before us does not establish that during the terms of the commissioners in question, the commissioners increased their daily compensation rate. Presumably they had previously drawn the full $25 per day authorized by statute for performing district business, since no issue has been raised in that connection. We therefore do not address whether a midterm increase in such daily compensation would have been prohibited by the constitution.

Before the 1975 amendment to RCW 70.44.050, the legislature had mandated an annual $600 ceiling on the amount of compensation that a public hospital district

commissioner could draw. Then in 1975, in recognition of the increasingly time–consuming nature of the job of running a hospital district, the legislature increased that annual ceiling to $1,200. Laws of 1975, ch. 42, § 1, p. 71.

 Words used in a constitution are to be understood in their usual and ordinary sense. *Gruen v. Tax Comm'n,* 35 Wn.2d 1, 53, 211 P.2d 651 (1949). If persons employed at a daily wage in the general job market see fit to work more days (or less days) in one given time period than in another, it is unlikely that anyone would seriously contend that by so doing they thereby "fix their own compensation." So it is here that the commissioners by working more days, as required by their hospital district duties, do not thereby "fix their own compensation" within the contemplation of article 30, section 1 of the Washington State Constitution. "To fix compensation is to name it," *Commonwealth v. Rose,* 160 Va. 177, 180, 168 S.E. 356 (1933), and here the annual compensation ceiling was named by the legislature not the commissioners.

Furthermore, "[i]n interpreting and developing the constitution and laws, courts cannot operate in a vacuum." *Houser v. State,* 85 Wn.2d 803, 807, 540 P.2d 412 (1975). Thus, in determining the meaning of a constitutional provision, the history of events and proceedings contemporaneous with its adoption may properly be considered. *Yelle v. Bishop,* 55 Wn.2d 286, 291, 347 P.2d 1081 (1959).

Article 30, section 1 of the Washington State Constitution was adopted as the 54th amendment by a vote of the people in 1968. It was put on the election ballot by the legislature as House Joint Resolution No. 13 (HJR 13).

The "Statement For" HJR 13 in the Official Voters Pamphlet published and distributed to voters by the Secretary of State prior to that election is instructive in pointing out the kind of inequities that the measure was designed to correct. That statement is set out in full in the

margin.[1] No "Statement Against" was filed. Nothing therein suggests that the intent of the electorate in adopting HJR 13 was to prevent the commissioners in this case from being paid $25 per day for each day they devote to the business of their hospital district up to a total of $1,200 per year, the maximum established by the present statute. RCW 70.44.050 (Laws of 1975, ch. 42, § 1, p. 71). Instead

---

[1] "STATEMENT FOR ·

"HJR 13 is a resolution passed by the 1967 State Legislature designed to modernize the State Constitution. It provides that all elective and appointive state, county and municipal officers and officials, including judges, *who do not set their own salaries,* may receive salary increases during their terms of office.

"Vote 'Yes' because:
"1. Under the present law, many newly elected and appointed officials and judges receive a salary greater than their colleagues with longer tenure. A current example of this outdated law finds that four new Superior Court judges receive 50% more compensation than 74 other judges, all of whom have served for a longer period of time. If we place our government officers and officials in a position of equal responsibility, it is only fair that we compensate them equally.
"2. Today, public officers, officials and judges are prohibited from having their salaries increased while serving their current terms of office. Some must wait as long as six years for their authorized raises. This hurts good government. With the increasing cost of living, an extreme economic hardship is placed on many of these public servants. Would you as a wage-earner be satisfied to wait as long as six years for your pay raise—one that was already being received by your co-workers?
"3. A 'YES' vote for HJR 13 will correct these unfair and discriminatory conditions. It will NOT, however, allow uncontrolled salary increases, since HJR 13 pertains only to state, county and municipal officials *who do not set their own salaries.* STATE LEGISLATORS, THEREFORE, COULD NOT RAISE THEIR OWN SALARIES DURING A CURRENT TERM OF OFFICE.

*"Statewide Steering Committee:* WILLIAM M. ALLEN, Board Chairman, The Boeing Co.; THOMAS GOSE, President, State Bar Association; FATHER JOHN A. FITTERER, S.J., President, Seattle University; GOODWIN CHASE, Tacoma Banker; ROBERT KULL, Chairman, Democratic State Central Committee; C. MONTGOMERY JOHNSON, Chairman, Republican State Central Committee.

*"Committee appointed to compose the statement FOR House Joint Resolution No. 13:*

"WILLIAM (BILL) CHATALAS, State Representative; PERRY WOODALL, State Senator; ROBERT TWIGG, State Senator.

*"Advisory Committee:* EDWIN PRATT, Seattle Civic Leader; HOWARD GRIMM, International Director, Lions International; LUKE WILLIAMS, Spokane Civic Leader; WILLIAM KENTON, State Commander, American Legion." Official Voters Pamphlet 34 (1968).

just the reverse appears. As article 30, section 1 of the Washington State Constitution makes clear, its purpose is that officers such as these "shall each severally receive compensation for their services in accordance with the law in effect at the time the services are being rendered." Since the commissioners were paid on that basis, the trial court correctly ruled that the State was not entitled to any reimbursement from them.

Having decided this case on the basis stated, we do not reach the other issues discussed in the appellate briefs.

Affirmed.

SWANSON, A.C.J., and WILLIAMS, J., concur.