# Richmond

CITY OF PORTSMOUTH v. CITY OF CHESAPEAKE (FORMERLY COUNTY
OF NORFOLK).

June 15, 1964.

Record No. 5725.

Present, All the Justices.

*Henry T. Wickham* and *William B. Spong, Jr. (J. Stanley Livesay, Jr.; David J. Mays; Cooper, Spong & Davis; Tucker, Mays, Moore & Reed*, on brief), for the plaintiff in error.

*James N. Garrett* and *Edward L. Breeden, Jr. (William L. Forbes; James N. Garrett, Jr.; Breeden, Howard & MacMillan*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

On December 11, 1961, pursuant to Code, 1956 Replacement Vol., § 15-152.5, the City of Portsmouth filed in the Clerk's Office of the Circuit Court of Norfolk County a petition for the annexation of certain territory lying in Norfolk County and adjacent to the city. Attached to the petition was a certified copy of an ordinance adopted by the council of the city on December 9, setting forth the necessity for an expediency of such annexation and the metes and bounds and size of the territory sought to be annexed.

After the required preliminary orders had been entered and a three-judge court constituted pursuant to Code, 1956 Replacement Vol., § 15-152.8, the county filed a motion to dismiss the suit on the ground that, in violation of Code, 1962 Cum. Supp., § 15-152.25, as amended, this proceeding had been commenced within five years next succeeding the entry of a final order in a prior annexation proceeding. By a majority vote of the annexation court this motion was overruled.

Effective on January 1, 1963, Norfolk County and the City of South Norfolk had consolidated to form the City of Chesapeake. Thereafter, on motion of the City of Portsmouth, Chesapeake was substituted for Norfolk County as a party defendant. Chesapeake filed a special plea and several motions to dismiss, challenging the jurisdiction of the court to entertain the proceeding.

In a final order the annexation court sustained Chesapeake's plea that neither the Constitution of Virginia nor the applicable statutes permit the annexation of the territory of "one municipal corporation" by "another municipal corporation." It also sustained Chesapeake's motion to dismiss the proceeding on the ground that it was prematurely instituted and was without validity in that it was based on an emergency ordinance which had not been enacted in the manner required by the charter of the City of Portsmouth. For these reasons the court dismissed the proceeding.

We granted the City of Portsmouth a writ of error. In its assign-

ments of error the city attacks the action of the annexation court in dismissing the suit on the grounds asserted by the City of Chesapeake in its plea and motion to dismiss.

In the same final order the annexation court overruled Chesapeake's several other motions to dismiss, to which action Chesapeake has filed assignments of cross-error.

In support of its plea sustained by the court, Chesapeake contends that both § 126 of the Constitution of Virginia and the general annexation statutes passed pursuant thereto contemplate the extension of the corporate boundaries of a city by annexing a part of the territory of a county, but not a portion of the territory of another city or municipal corporation; that § 126 of the Constitution requires the enactment of general laws for the extension and the contraction of the corporate limits of a city and prohibits any special act for such purpose; and that Code, 1962 Cum. Supp., § 15-152.29, as amended, and § 21.10 of the charter of Chesapeake, relied upon by Portsmouth, are special acts prohibited by § 126 of the Constitution.

Section 126 of the Constitution reads: "The General Assembly shall provide by general laws for the extension and the contraction, from time to time, of the corporate limits of cities and towns; and no special act for such purpose shall be valid."

Code, § 15-152.29, as amended by Acts of 1962, ch. 265, p. 391, after prohibiting the institution of annexation proceedings by a city or town and the consolidation of a city or town with any other county, city or town for a stated period, contains this proviso: "provided, however, that this section shall not apply * * * (iii) to the prosecution of any valid annexation proceedings against any county, notice of which was given to the Commonwealth's Attorney and to each member of the governing body of said county prior to the date the consolidation agreement was approved by the governing bodies of said county and such other county, city or town seeking to consolidate and *the right is hereby expressly granted to any such city seeking to annex to proceed with any such valid annexation suit against such county, pending as aforesaid, as if consolidation had not taken place and the consolidated city may be substituted as party defendant.*" (Emphasis added.)

Section 21.10 of the charter of the City of Chesapeake reads as follows:

"*Pending Annexation Suits.* The granting of this charter shall not affect the prosecution of any valid annexation proceedings against Norfolk County, notice of which was given to the Commonwealth's

Attorney and to each member of the governing body of the said Norfolk County prior to the date the consolidation agreement was approved by the governing bodies of the said County and the City of South Norfolk; *and the right is hereby expressly granted to any such city to proceed with any such valid annexation suit against Norfolk County, pending as aforesaid, as if consolidation had not taken place, and the consolidated city may be substituted as party defendant.*" Acts of 1962, ch. 211, p. 316. (Emphasis added.)

It will be observed that § 126 of the Constitution, *supra*, requires that the General Assembly "provide by general laws for the extension and the contraction" of the corporate limits of cities and towns and prohibits a "special act" for such purpose.

We do not agree with the contention of Chesapeake that the proviso or saving clause in Code, § 15-152.29(iii) is special legislation prohibited by § 126 of the Constitution. This saving clause expressly grants the right to any city to proceed with any valid annexation suit, notice of which was given prior to the date a consolidation agreement was approved by the governing bodies of a county and city, as if consolidation had not taken place. This is expressed in general language and on its face the provision applies to all cities and counties which may be similarly situated and come within the classification. See *City of Newport News* v. *Elizabeth City County*, 189 Va. 825, 839, 841, 55 S. E. 2d 56, 64, 65; *Ex parte Settle*, 114 Va. 715, 718, 77 S. E. 496, 497.

Neither is § 21.10, *supra*, of the charter of the City of Chesapeake within the prohibition of § 126 of the Constitution. While it is incorporated in the charter of the city, which, of course, is a special act, it is not the type of special act within the purview of the constitutional provision.

Prior to the adoption of the Constitution of 1902, the General Assembly exercised the power of enlarging the limits of cities and towns by passing special acts, each act authorizing the enlargement of some particular city or town. Deeming it unwise for the General Assembly to continue to exercise this power, the Constitutional Convention adopted § 126. See *Henrico County* v. *City of Richmond*, 106 Va. 282, 290, 55 S. E. 683, 117 Am. St. Rep. 1001; *Falls Church* v. *Board of Sup'rs of Fairfax County*, 193 Va. 112, 114, 68 S. E. 2d 96, 98. This section requires that the General Assembly shall provide by "general laws" for the extension and the contraction, from time to time, of the corporate limits of cities and towns and that no "special act" for such purpose shall be valid. The obvious purpose of

the provision is to prohibit the determination by special act of what amount of territory should be annexed to a city or how its limits should be contracted.

Section 21.10 of Chesapeake's charter does not provide "for the extension" of the corporate limits of the City of Portsmouth, nor does it specify what territory should be annexed thereto. As its title indicates, it deals with "Pending Annexation Suits." Its plain purpose is to preserve the right to prosecute "any valid annexation proceedings against Norfolk County" which may have been properly instituted prior to the approval of the consolidation agreement between that county and the City of South Norfolk. Specifically, it preserved the right to the City of Portsmouth to proceed with the present proceeding provided it was a "valid annexation suit."

Moreover, § 21.10 of the charter is in conformity with Code, § 15-228, which reads as follows: "Any action or proceeding pending by or against any counties, cities or towns so consolidated *may be perfected to judgment as if such consolidation had not taken place, or the consolidated city, or county or counties if any may be substituted* according to where the cause of action arose." (Emphasis added.)

Pursuant to this latter section, on motion of the City of Portsmouth, the City of Chesapeake was properly substituted as a party defendant in place of Norfolk County.

Section 21.10 of Chesapeake's charter is likewise in conformity with § 20.09 of the charter which provides that all actions of every kind pending in the courts of the City of South Norfolk and Norfolk County on the effective date of the charter, "shall be transferred to and proceed to final judgment in the appropriate courts of the Consolidated City." Acts of 1962, ch. 211, p. 315.

■ There is no constitutional prohibition against the annexation by a city of a portion of the territory of another city. In the absence of such a prohibition, the General Assembly has power to deal with the subject. 4 Mich. Jur., Constitutional Law, § 31, p. 114, and cases there cited.

It is true, as Chesapeake argues, that the general annexation statutes are designed for the enlargement of the boundaries of a city by annexing a portion of the territory of an adjacent county. Obviously the present suit was instituted for that purpose.

It is plain from the provisions of Code, § 15-152.29(iii), *supra*, §§ 21.10 and 20.09, *supra*, of the charter of Chesapeake, and Code, § 15-228, *supra*, that it was the intent of the General Assembly that a valid annexation proceeding, instituted prior to the approval of

a consolidation agreement, may be prosecuted to its conclusion, notwithstanding such consolidation. In this situation, the present annexation court has full authority to proceed under the general annexation statutes and determine whether the City of Portsmouth is entitled to an extension of its boundaries by annexing the whole or any portion of the territory which was at the time of the institution of this suit a part of Norfolk County and has since become a part of the City of Chesapeake, and, if so, upon what terms.

At the same time the City of Chesapeake, which stands in the shoes of Norfolk County, will have the opportunity of making the same claims and defenses as the county could have made.

We hold that the annexation court erred in sustaining Chesapeake's plea and in dismissing the suit on the first ground assigned in its order.

■ The annexation court also sustained Chesapeake's motion to dismiss the suit on the grounds that it was "prematurely instituted" and "without validity" in that it was based on an emergency ordinance which had not been enacted in the manner required by the charter of the City of Portsmouth. Specifically, the motion to dismiss alleged that the ordinance "fails to recite the existence of an immediate necessity for the preservation of the public morals, health or safety; nor does it recite that the ordinance itself is immediately necessary for said preservation."

Chapter 10, § 2, of the charter of the City of Portsmouth, as amended by Acts of 1918, ch. 69, p. 125, reads in part as follows: "No ordinance passed by the council, unless (a) otherwise required by the general laws of the State, or (b) an ordinance immediately necessary for the preservation of the public morals, health or safety, and which contains a statement of such immediate necessity and is passed by at least a three-fourths vote of the council, shall go into effect until thirty days after its final passage."

Section IX of the ordinance in question reads: "This ordinance being necessary for the preservation of the public morals, health and safety, an emergency is declared to exist, and it shall take effect from and after its passage."

It is true, as Chesapeake points out, that the enactment of a valid ordinance is a prerequisite to the jurisdiction of an annexation court. *City of Martinsville* v. *County of Henry*, 204 Va. 757, 761, 133 S. E. 2d 287, 289, and cases there cited. But Chesapeake argues that the ordinance here involved was not a valid enactment, effective from the date of its passage, because, it says, it was not enacted in the manner

prescribed by the above provision of the charter for the adoption of an emergency ordinance. Hence, Chesapeake says, the institution of the suit on December 11, 1961, was premature and properly dismissed.

Here the main contention of Chesapeake is that the ordinance was fatally defective in that it "failed to make a finding of 'immediate necessity' and failed to state any facts to show that an 'immediate necessity' existed." Moreover, Chesapeake contends that in fact there existed no "immediate necessity" for the enactment of an emergency ordinance within the meaning of the above provision of the charter of the City of Portsmouth.

Section 2, *supra*, of the charter of the City of Portsmouth specifies the requirements for the enactment of an emergency ordinance as "an ordinance immediately necessary for the preservation of the public morals, health or safety, and which contains a statement of such immediate necessity and is passed by at least a three-fourths vote of the council."

It will be observed that under this language the enactment must be "immediately necessary" and the ordinance must contain "a statement of such immediate necessity." The provision does not require, as Chesapeake contends, that the particular words "immediately necessary" or "immediate necessity" be written into the ordinance. Nor does it require, as some charters do, a statement of the facts showing the existence of the emergency or the reasons therefor.[1]

The requirement in the charter of Portsmouth that the ordinance shall contain "a statement of such immediate necessity" is met by the statement that "an emergency is declared to exist." The word "emergency" imports "immediate necessity." It is defined in Webster's International Dictionary, 3d Ed., as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." See also, 38 Am. Jur., Municipal Corporations, § 450, p. 132.

The finding of the council of the City of Portsmouth that the enactment of the ordinance was "necessary for the preservation of the public morals, health and safety," and its declaration that an emergency existed, are findings of fact, legislative in character, presumptively correct, and will be acquiesced in by the courts unless clearly

---

[1] Cf.: Charter of the City of Norfolk (Acts 1918, ch. 34, § 15, p. 41) which provides that in an emergency ordinance "the emergency is set forth and defined in a preamble thereto."

Charter of the City of Richmond (Acts 1948, ch. 116, § 4.11, p. 193) which provides that "An emergency ordinance must contain a specific statement of the emergency claimed."

shown to be arbitrary or unreasonable. *Bristol Redevelopment & Housing Authority* v. *Denton*, 198 Va. 171, 176, 177, 93 S. E. 2d 288, 292, 293, and authorities there cited.

In the case before us there is an entire absence of any showing that the legislative findings with respect to these matters were arbitrary or unreasonable. The evidence introduced by the City of Chesapeake tended to show that the enactment of the ordinance was not immediately necessary for the preservation of the public morals, health or safety of that portion of Norfolk County which the City of Portsmouth intended to annex. But such was not the test. The test was whether the enactment was immediately necessary for the preservation of the morals, health and safety of the citizens and property within the then limits of the City of Portsmouth. The admitted circumstances justify the legislative finding that the enactment of the ordinance was "immediately necessary" for that purpose.

Inasmuch as the regular session of the General Assembly was due to convene on January 10, 1962, and there was a probability that legislation would be enacted which would adversely affect the right of the City of Portsmouth to institute and prosecute an annexation proceeding against Norfolk County, the council of the City of Portsmouth had the right to find that before that event occurred it was necessary that it enact an ordinance as the basis for the commencement of an annexation proceeding. Moreover, at the time of the enactment of the emergency ordinance, Norfolk County and the City of South Norfolk were negotiating for the consolidation of these political entities and their incorporation as a single city. Such incorporation would preclude Portsmouth from annexing any portion of the territory of what was formerly Norfolk County. These circumstances fully warranted Portsmouth in enacting an emergency ordinance as the basis for the commencement of annexation proceedings against Norfolk County.

The ordinance recited that because of the growth of the city and the lack of space within its corporate limits for expansion, it was "manifest" that the city "must expand into the areas sought to be annexed or cease to grow and eventually decline."

Accordingly, we hold that the annexation court erred in sustaining Chesapeake's motion to dismiss the suit on the ground that the ordinance on which the proceeding was based was not properly enacted.

■ Chesapeake filed a motion to dismiss the suit on the ground that under the provisions of Code, 1962 Cum. Supp., § 15-152.25, as

amended, the City of Portsmouth was prohibited from instituting this proceeding because it was brought within five years of the date of the entry of a final order in a previous annexation suit which the City of Portsmouth had filed against Norfolk County. By a divided vote, the annexation court overruled this motion,[2] and to that action Chesapeake has filed an assignment of cross-error.

The pertinent portion of § 15-152.25, as amended by Acts of 1958, ch. 378, p. 497, with the amendment printed in italics, reads as follows:

"No city or town, having instituted proceedings to annex territory of a county, shall again seek to annex territory of such county within the five years next succeeding the entry of the final order in any annexation proceedings under this article or previous acts except by mutual agreement of the governing bodies affected, in which case the city or town moving to dismiss the proceedings before a hearing on its merits may file a new petition five years after the filing of the petition in the prior suit. *Nor shall any county be made defendant in any annexation proceeding brought by any city, except by consent of the county governing body, more frequently than once in any five-year period following the conclusion of any annexation proceeding instituted against it by any city; provided, however, that this provision shall not apply to any suits brought by consent of the county governing body; nor shall this provision apply to any annexation proceedings pending and undetermined on the effective date of this amendment.*

"*Notwithstanding the foregoing provisions, a city shall have the right to file and maintain an annexation proceeding against any county against which it has not filed such a proceeding during the preceding eight years.*"

The record shows that the City of Portsmouth instituted an annexation proceeding against Norfolk County in November, 1953, and that a final order was entered therein in August, 1959. Since the present suit was instituted within five years of the date of the entry of that final order, the City of Chesapeake contends that under the first paragraph of this section the present suit is barred.

The position of the City of Portsmouth, upheld by the majority of the annexation court, is that the right to maintain this suit is preserved under the provisions of the final paragraph of the section; that these provisions qualify the first paragraph and permit the filing of the

---

[2] As has been said, a similar motion had been filed by Norfolk County and over-ruled.

present suit after the expiration of eight years from the date of the filing of the previous suit, which has occurred.

Chesapeake seems to concede that the language of the statute as printed in the Code, 1962 Cum. Supp., the Acts of Assembly and the enrolled bill supports the position of Portsmouth. But Chesapeake argues that the legislative journals show that the proper language, as adopted by the General Assembly, is not incorporated in the Code, the Acts of Assembly, or the enrolled bill. It says that the journals show that the provisions of the last paragraph of the section were not intended to be a separate paragraph as printed, but were added by way of amendment to the sentence immediately preceding it, and that when so applied, these provisions qualify merely this preceding sentence and do not affect or qualify the five-year prohibition found in the first sentence of the section.

Much is said in the briefs on both sides as to whether the enrolled bill is conclusive of the form and content of the legislative enactment. This is a subject on which there is a conflict of authority. Sutherland on Statutory Construction, 3d Ed., Vol. 1, § 1402 *ff.*, p. 223 *ff.*; 50 Am. Jur., Statutes, §§ 149, 150, p. 129 *ff.* While the subject has been approached and discussed by this court on a number of occasions it has not been settled. *Town of Narrows* v. *Board of Sup'rs of Giles County*, 128 Va. 572, 586, 105 S. E. 82. Nor is it necessary that it be decided in this case.

We have many times said that where the language of a statute is free from ambiguity, its plain meaning is to be accepted without re-sort to the rules of interpretation. In that situation, we take the words as written and a resort to extrinsic facts to determine their meaning is not permitted. 17 Mich. Jur., Statutes, § 34, pp. 283, 284, and cases there collected. Upon this principle the plain meaning of a statute cannot be affected by resort to its legislative history. 82 C. J. S., Statutes, § 355, pp. 751, 752; 17 Mich. Jur., Statutes, § 36, p. 286 *ff.*; *Commonwealth* v. *Rose*, 160 Va. 177, 181, 168 S. E. 356.

In the present case it is perfectly plain that as the statute is written the last paragraph of the section qualifies all of the preceding pro-visions in the section and not merely those in the sentence immediate-ly preceding it. The language "foregoing provisions" relates to all of the early provisions in the section, whether in the same sentence, the same paragraph, or the preceding paragraph. Thus, the effect of the last paragraph of the section is to permit the filing of the present suit after the expiration of eight years from the date of the filing of the previous suit.

Accordingly, we hold that this motion of Chesapeake to dismiss was properly overruled.

■ Chesapeake filed a motion to dismiss the present suit on the grounds that, (1) is was adjudicated in a prior proceeding instituted by the City of Portsmouth against Norfolk County, in 1953, that the city was not entitled to annex a portion of the territory sought to be annexed in the present proceeding, and that that adjudication is res judicata of the right of the city to seek the annexation of the same territory in the present suit; (2) under Code, 1956 Replacement Vol., § 15-152.17, the prior annexation court is still in existence and has exclusive jurisdiction and authority to compel the performance of its decree denying the City of Portsmouth the right to annex the same territory.

The annexation court overruled this motion to dismiss and to that action Chesapeake has filed an assignment of cross-error. We find that neither ground was well taken and that the motion to dismiss was properly overruled.

In *Worrie* v. *Boze,* 198 Va. 533, 538, 95 S. E. 2d 192, 197, 63 A. L. R. 2d 1315, we pointed out that one who asserts the defense of res judicata has the burden of proving that the very point in question was in issue and determined in the prior action and proof of identity of issues must be established by a preponderance of the evidence.

In the present case the City of Chesapeake offered no evidence as to the identity of the issues in the former and present suits. There is an entire absence of evidence as to whether the issues of necessity for and expediency of the annexation in the present suit are the same as those involved in the prior suit. Obviously they are not. *Mowry* v. *City of Virginia Beach,* 198 Va. 205, 211, 93 S. E. 2d 323, 327.

■ As to Chesapeake's second ground, it is true that under the provisions of Code, 1956 Replacement Vol., § 15-152.17,[3] the former annexation court remained in existence for a period of five years

---

[3] The pertinent portion of the statute reads:

"§ 15-152.17. *Court granting annexation to exist for five years.*—(a) The court created by § 15-152.8 shall not be dissolved after rendering a decision granting any motion or petition for annexation, but shall remain in existence for a period of five years from the effective date of any annexation order entered, or from the date of any decision of the Supreme Court of Appeals affirming such an order. * * *

"(b) The court may be reconvened at any time during the five-year period on its own motion, or on motion of the governing body of the county, or of the city or town, or on petition of not less than fifty freeholders in the area annexed.

"(c) The court shall have power and it shall be its duty, at any time during such period, to enforce the performance of the terms and conditions under which annexation was granted, and to issue appropriate process to compel such performance. * * *"

"from the effective date of any annexation order entered, or from the date of any decision of the Supreme Court of Appeals affirming such an order," and that at the time of the institution of the present suit such period had not expired. While the statute further provides that the court may be reconvened at any time during the five-year period, under the plain language of subsection (c) its functions are limited to the enforcement of the terms and conditions of such annexation order as it may have entered. There is nothing in the language of the statute to indicate that the court may be reconvened for the purpose of reconsidering and rehearing its prior order denying to the City of Portsmouth the right to annex any portion of the territory sued for.

Insofar as the order appealed from overruled the several motions of Chesapeake, it is affirmed; insofar as it sustained the plea and motion of Chesapeake and dismissed the suit, it is reversed. The case is remanded to the annexation court for further proceedings in conformity with the views here expressed.

*Affirmed in part, reversed in part, and remanded.*