## Richmond

## DONALD L. COX

v.

## COMMONWEALTH OF VIRGINIA

June 8, 1979.

Record No. 781503.

Present: All the Justices.

*Donald K. Butler* for appellant.

*Richard B. Smith, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

PER CURIAM.

Defendant, Donald L. Cox, was charged with unlawfully tampering with a metering device[1] belonging to the Virginia Electric and Power Company (VEPCO) for the purpose of restoring electrical service without VEPCO's consent. A jury found defendant guilty and fixed his punishment at a fine of $25. Judgment was entered on the jury's verdict.

The agreed statement of facts shows that on the afternoon of December 30, 1977 defendant moved into a residence in Henrico County, and at that time he found that he had no electrical service. The service had been turned off when the previous tenant had moved from the premises that morning. After discovering that there was no electrical service at the residence, defendant called VEPCO's customer service department to seek service connection. However, that department had already closed at the end of regular business hours. Since it was New Year's Day weekend, the next regular business day was Tuesday, January 3, 1978, which was the earliest date that defendant could make application for electrical service and arrange for service connection. Defendant called several other VEPCO departments, seeking to arrange for service without success.

Later that day, defendant determined to connect the electrical service himself. He testified that he did so because it was cold, he needed electricity to heat and light the house, and he had his three children with him.

Defendant, employed by the City of Richmond as a gas meter serviceman, had certain tools in his possession and some mechanical knowledge of various metering devices. Using a gas meter key device, he attempted to unlock a security band around the electrical metering device. The key became jammed, the band around the meter was sprung and rendered useless, and the glass cover of the meter was cracked during the process. Defendant removed the "sleeves" from the meter, which had the effect of restoring electrical service to the house.

[1]Code § 18.2-163.

On January 11, 1978, defendant's fiancée called VEPCO and made formal application for service. Defendant explained that he instructed his fiancée to do this so that a serviceman could come to the house on January 12 when defendant would be present and available to explain what he had done. A VEPCO serviceman arrived at the house and found service reconnected and the meter damaged. An investigator for VEPCO was summoned to speak with the defendant.

Defendant freely admitted reconnecting electrical service and causing damage to the meter. He reimbursed VEPCO for electricity used between December 30, 1977 and January 12, 1978, for the damage to the meter, and for the service charges necessitated by the serviceman's and investigator's visits. Charges for electricity were determined by reading the meter, which when later tested was found to be recording electrical usage accurately.

Whether defendant's conviction can be upheld depends upon the proper interpretation of Code § 18.2-163, which read as follows:

> "**Tampering with metering device; diverting service.** — Any person who shall tamper with any metering device incident to the facilities set forth in § 18.2-162, or otherwise intentionally prevent such a metering device from properly registering the degree, amount or quantity of such service supplied, or who shall divert such service, excepting, however, telephonic or electronic extension service not owned or controlled by any such company without authorization from the owner of such facility who or which furnishes such service to the public, shall be guilty of a Class 1 misdemeanor."[2]

Defendant contends that the language in the statute "or otherwise intentionally prevent" modifies or qualifies the word "tamper" in the first part of the statute and that a reading of the entire statute shows the type of activity the statute proscribes is larceny. Thus, he argues the Commonwealth was required to prove that the defendant tampered with the meter with a fraudulent or larcenous intent, and since there was no evidence in this case that the

---

[2]The statute was amended in 1978.

defendant tampered with the meter with such intent, his conviction should be reversed.

■ It is elementary that a penal statute is to be strictly construed against the state and in favor of the liberty of a citizen. "Such statutes cannot be extended by implication or construction, or be made to embrace cases which are not within their letter and spirit." *Berry* v. *Commonwealth,* 209 Va. 525, 526, 165 S.E.2d 291, 292 (1969); *Price* v. *Commonwealth,* 209 Va. 383, 385, 164 S.E.2d 676, 678 (1968).

■ The word "tamper" in its usual and common acceptation means to "interfere improperly" and "to meddle so as to alter a thing, especially to make corrupting or perverting changes." *Black's Law Dictionary* at 1627 (rev. 4th ed. 1968); 41 Words and Phrases at 146-47 (1965). The words "or otherwise [in a different manner; in other ways] intentionally prevent" used in the statute key the word "tamper" to intentionally preventing the "metering device from properly registering the degree, amount or quantity of such service supplied." Hence, we construe the first and second clauses of the statute with which we are here concerned to mean tampering with the metering device for a corrupt purpose of preventing its proper registration of the amount of the electrical service supplied.

■ In the present case, the defendant broke the security band from around the metering device, cracked the glass cover of the meter, and removed the "sleeves" to restore the flow of electricity to the house. While these actions were clearly tampering with the metering device, there was no proof that the defendant tampered with intent to prevent the meter from properly registering the degree, amount or quantity of electrical service. The defendant's subsequent actions negate the inference of a corrupt purpose in restoring electrical service to his house.

For the reasons stated, the judgment of conviction is reversed and the warrant is dismissed.

*Reversed and dismissed.*