KEITH ALLAN HARWARD

V.

COMMONWEALTH OF VIRGINIA

Record No. 840550

Decided April 26, 1985, at Richmond

Present: All the Justices

*Janet I. Farquharson; E. Thomas Cox (Patten, Wornom & Watkins, on brief), for appellant.*

*Thomas C. Daniel, Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.*

STEPHENSON, J., delivered the opinion of the Court.

Keith Allan Harward was charged with capital murder. The indictment alleged that he "feloniously, deliberately, and with premeditation did kill and murder Jesse Perron during the commission of, or subsequent to rape upon Teresa Perron, wife of Jesse Perron," in violation of Code § 18.2-31(e).

In a bifurcated trial, a jury convicted Harward of capital murder and fixed his punishment at life imprisonment. Thereafter, the trial court sentenced Harward in accordance with the verdict.

Code § 18.2-31(e) provides that "[t]he willful, deliberate and premeditated killing of a person during the commission of, or subsequent to, rape" shall constitute capital murder. The sole issue on appeal, presenting a case of first impression, is whether, under Code § 18.2-31(e), the person murdered can be someone other than the rape victim.

For purposes of this appeal, a brief recitation of the facts will suffice. On the night of September 14, 1982, Harward broke into the home of Jesse and Teresa Perron while the Perrons and their three children were asleep. Teresa was awakened by a loud noise and discovered Harward hitting her husband with a crowbar.

Harward pulled Teresa out of bed, and she fell on the floor. The defendant pinned her to the floor by putting his legs over hers and continued to hit Jesse with the crowbar until Jesse was rendered unconscious.

Harward told Teresa that he did not want to kill her husband, but only "knock him out." The defendant also warned Teresa that unless she did as he demanded, he would "get" her children. Harward disrobed Teresa and raped her. Afterward, Teresa could hear her husband gasping for breath and moaning. After a further rape and forcible sodomy, the defendant left. Teresa called the

police, and when they arrived Jesse was dead. His death was caused by multiple blows to his head.

■ The primary objective of statutory construction is to determine legislative intent. In determining that intent, the plain, obvious, and rational meaning of a statute is always preferred over a curious, narrow, or strained construction. *Graybeal* v. *Commonwealth*, 228 Va. 736, 739, 324 S.E.2d 698, 699-700 (1985); *Turner* v. *Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983).

■ Penal statutes are to be strictly construed against the Commonwealth and in favor of a citizen's liberty. They cannot be extended by implication but must be confined to those offenses proscribed by the language employed. *Martin* v. *Commonwealth*, 224 Va. 298, 300, 295 S.E.2d 890, 892 (1982); *Cox* v. *Commonwealth*, 220 Va. 22, 25, 255 S.E.2d 462, 464 (1979). Further, before an accused can be punished, "his case must be plainly and unmistakably within the statute," *United States* v. *Lacher*, 134 U.S. 624, 628 (1890), and he is entitled to the benefit of any reasonable doubt concerning the statute's construction. *Martin*, 224 Va. at 300-01, 295 S.E.2d at 892; *Enoch* v. *Commonwealth*, 141 Va. 411, 436, 126 S.E. 222, 230 (1925).

■ To ascertain the meaning and intent of subsection (e) of Code § 18.2-31, we must look to the entire section as it read at the time of the offense:

The following offenses shall constitute capital murder, punishable as a Class 1 felony:

(a) The willful, deliberate and premeditated killing of any person in the commission of abduction, as defined in § 18.2-48, when such abduction was committed with the intent to extort money or a pecuniary benefit;

(b) The willful, deliberate and premeditated killing of any person by another for hire;

(c) The willful, deliberate and premeditated killing of any person by a prisoner confined in a state or local correctional facility as defined in § 53.1-1, or while in the custody of an employee thereof;

(d) The willful, deliberate and premeditated killing of any person in the commission of robbery while armed with a deadly weapon;

(e) The willful, deliberate and premeditated killing of a person during the commission of, or subsequent to, rape;

(f) The willful, deliberate and premeditated killing of a law-enforcement officer as defined in § 9-108.1 H when such killing is for the purpose of interfering with the performance of his official duties; and

(g) The willful, deliberate and premeditated killing of more than one person as a part of the same act or transaction.

If any one or more subsections, sentences or parts of this section shall be judged unconstitutional or invalid, such adjudication shall not affect, impair or invalidate the remaining provisions thereof but shall be confined in its operation to the specific provisions so held unconstitutional or invalid.

We find it most significant that the General Assembly referred to the killing of "any person" in subsections (a) through (d) of Code § 18.2-31 and then, in subsection (e), employed the term "a person." "Any" and "a" are not synonymous. "Any" includes "all" and "a" is limited to "one." *See County of Loudoun* v. *Parker*, 205 Va. 357, 362, 136 S.E.2d 805, 809 (1964).

Other language differences are likewise significant. Subsection (e) proscribes killing "during the commission of, or subsequent to, rape." This language establishes a narrower time frame than that created by the phrase "in the commission of" found in subsections (a) and (d) of Code § 18.2-31 and in Code § 18.2-32.[1] The phrase "in the commission of" includes a killing *before, during,* and *after* the underlying felony, while the language "during the commission of, or subsequent to" excludes a killing which occurs *before* a rape. The General Assembly's use of the more restrictive language in subsection (e) supports the contention that the person killed can be none other than the rape victim.

We believe that these language changes within the same statute create an ambiguity making subsection (e) susceptible of more

---

[1] Code § 18.2-32 reads in pertinent part:

Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate object sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-31, is murder of the first degree, . . . .

than one construction. Indeed, the Attorney General implicitly acknowledged in oral argument that an ambiguity exists.[2]

It is true, as the Attorney General argues, that had the General Assembly used the terms "a woman" or "the woman" rather than "a person," it would have clearly and explicitly limited subsection (e)'s application to the rape victim. This argument, however, begs the issue. Because the language employed is ambiguous and one reasonable construction confines the killing to a rape victim, we cannot adopt another construction which could impose a more severe penalty on an accused. Instead, as previously noted, we must construe the statute strictly against the Commonwealth and in favor of the defendant and resolve any reasonable doubt respecting its intended meaning in the accused's favor.

 Thus, applying the rule of strict construction, we conclude that Code § 18.2-31(e) only proscribes the murder of a rape victim and cannot be extended to include the murder of another. Accordingly, the judgment of the trial court will be reversed and the case remanded for a new trial for an offense no greater than murder in the first degree.

*Reversed and remanded.*

RUSSELL, J., dissenting.

The statute under consideration penalizes as capital murder the killing of *"a person* during the commission of, or subsequent to, rape." Code § 18.2-31(e) (emphasis added). In this case, the murderer killed the rape victim's husband. The only definition of "person" applicable to a victim of a homicide is "an individual human being." Webster's Third New International Dictionary 1686 (3d ed. 1976).

Although contrary views are sometimes expressed, it remains my impression that husbands, as a class, retain their membership in the human race. If that proposition remains true, the victim of the murder in this case was "a person." If he was, the statute clearly includes this homicide. We refused the defendant's appeal as to all other assignments of error.

---

[2] The Attorney General said, in part, that "this change in language . . . certainly raises the issue of ambiguity . . . . [T]his change could conceivably mean a great deal . . . . I think it's important that this matter be cleared up."

Yet, the majority has concluded that for the purposes of this statute the homicide victim was not "a person." This was accomplished by recourse to rules of statutory construction, in which the legislative intent was divined by contrasting the various parts of the statute in an effort to determine what the General Assembly had in mind. The fact that the legislature used "any person" in other sections is employed as a rationale for holding the phrase "a person" to be ambiguous.

The fault in that analysis is that unless the words to be interpreted are in themselves ambiguous, there is no reason for statutory construction at all. *Brown, et al.* v. *Lukhard, etc., et al.,* 229 Va. 316, 330 S.E.2d 84 (this day decided); *School Board* v. *State Board, et al.,* 219 Va. 244, 250, 247 S.E.2d 380, 384 (1978). We are not free to go outside a specific, unambiguous clause and search through the act at large for provisions which might tend to render ambiguous the plain terms of the clause under consideration. *Lane* v. *Board of Trustees of Employees R. & B. Fund,* 139 W. Va. 878, 82 S.E.2d 179 (1954).

We follow the "plain meaning" rule in Virginia. *Berry* v. *Klinger,* 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). Where the language of a statute is clear and unambiguous, rules of statutory construction are not required. *Ambrogi* v. *Koontz,* 224 Va. 381, 386, 297 S.E.2d 660, 662 (1982). The language "killing of a person" is plain, clear, intelligible, and meaningful. Whether such language is wise or necessary is a question for the legislature, not for the courts. *Carter, Adm'r,* v. *Nelms,* 204 Va. 338, 346, 131 S.E.2d 401, 406 (1963).

> We have many times said that where the language of a statute is free from ambiguity, its plain meaning is to be accepted without resort to the rules of interpretation. In that situation, we take the words as written and *a resort to the extrinsic facts to determine their meaning is not permitted.*

*Portsmouth* v. *Chesapeake,* 205 Va. 259, 269, 136 S.E.2d 817, 825 (1964) (emphasis added). This principle is a valuable guard against unwarranted judicial activism. It is by no means new and is deeply embedded in our jurisprudence. *See, e.g., United States* v. *Fisher,* 6 U.S. (2 Cranch) 358 (1804); *Carter* v. *Tyler,* 5 Va. (1 Call) 165, 184 (1797).

If the General Assembly intended to restrict the operation of the capital murder statute to the killing of a rape victim, as the majority holds, it knew how to say so. Instead, it chose to penalize the "killing of a person," perhaps as clear an example of plain, unambiguous language as there is to be found in the Code. I would apply this language as written, and affirm the conviction.

CARRICO, C.J., and COCHRAN, J., join in dissent.