## CIRCUIT COURT OF THE CITY OF RICHMOND

Taja Smith, infant, etc.

v.

Charity and Gibson, P.C., et al.

September 18, 1991

Case No. LS-2458-1

By JUDGE MELVIN R. HUGHES, JR.

This case is an action brought by Taja Smith, an infant, and her mother, Connie Smith, plaintiffs, against Renard A. Charity, M.D., and Janice L. Gibson, M.D., and Charity and Gibson, P.C., defendants, arising out of the birth of Taja on July 23, 1988. Before the Court now is defendants' Demurrer to those portions of the Motion for Judgment which claim damages against defendants for violation of the Emergency Medical Treatment and Women In Active Labor Act (Act), 42 U.S.C., § 1395dd (1988). In this aspect, the Motion for Judgment alleges the defendants failed to properly stabilize Connie Smith at a hospital and properly transfer her to another medical facility. The Act is the so-called patient dumping law which prohibits hospitals receiving federal funds from not giving treatment to patients with medical emergencies and denying stabilizing treatment to such patients prior to transfer to more appropriate medical facilities.

The Demurrer asserts that only hospitals, not physicians, are liable under the Act for money damages and that the Act reaches only those who are dumped because

of economic reasons, a fact which the Motion for Judgment does not allege. Defendants also contend that the Motion for Judgment alleges only matters of medical malpractice relating to diagnosis and treatment, things which are not covered by the Act and for which plaintiffs cannot seek recover under it. Plaintiffs answer that the Act does allow recovery against physicians and that claims under the Act are acts of medical malpractice as well as violations of the Act constituting negligence *per se*. *See* § 8.01-221, Code of Virginia of 1950, as amended. For the following reasons, the Court finds as follows: first, the denial of services for economic reasons is not a requirement for violation of the Act; second, the Act does not afford a private right of action against physicians, only hospitals; third, violation of the Act is not negligence *per se* constituting a separate action for recovery thereunder.

### The Facts and Claims Under the Act

The facts pleaded in the Motion for Judgment and the fair inferences from them, as well as those mentioned during argument on the Demurrer which are not contested are taken as given for purposes of deciding the Demurrer. *Bowman v. State Bank of Keysville*, 229 Va. 534, 536 (1985).

On or about July 18, 1988, Connie Smith (Connie), a high risk patient who was 32 to 34 weeks pregnant at the time was admitted to Richmond Memorial Hospital with a premature rupture of membranes. Upon her admittance, defendants Charity and Gibson examined and treated Connie as they had before during this pregnancy. On July 22, 1988, while still at Richmond Memorial, Connie began complaining of abdominal cramping, vaginal discharge consisting of a greenish yellow fluid, and contractions five minutes apart. The hospital personnel contacted a Dr. Jones, a physician covering for Drs. Charity and Gibson, and Dr. Jones gave the order to transfer Connie to the Medical College of Virginia (MCV) which, unlike Richmond Memorial Hospital, maintains a Neonatal Intensive Care Unit. Upon her arrival at MCV on July 23, 1988, at 2:30 a.m., Connie was in labor and the fetus was in distress. At 9:48 a.m. on July 23, 1988, Taja was delivered by Caesarean section

by resident physicians at MCV. Both Taja and Connie sustained serious and permanent injuries.

With respect to patient dumping, plaintiffs allege that defendants failed to timely admit and transfer Connie to an appropriate hospital with proper facilities, failed to accompany Connie during the transfer, failed to communicate personally with MCV medical personnel about Connie's condition and make proper arrangements for transfer, and failed to insure that Connie's medical records and fetal monitoring strip were delivered timely to an appropriate attending physician at MCV.

### The Emergency Medical Treatment and Active Labor Act

The Act places requirements upon hospitals in the examination and treatment of persons in medical emergency and women in active labor. Hospitals must medically screen such patients upon presenting to the emergency room and after such procedure render the patient medically stable. If after screening, the patient is unstable and the condition presented is beyond the capability of the hospital to handle, the Act requires the hospital to transfer the patient to another medical facility with more appropriate capability. 42 U.S.C. § 1395dd(b)(1)(B). A transfer decision must have a physician certification that, considering risks and benefits to the patient, there are benefits the patient can receive from another medical facility, 42 U.S.C. § 1395dd(c)(1)(A)(i).

The Act provides for a "civil money penalty" due from a participating hospital and a responsible physician for negligent violations. 42 U.S.C. §§ 1395dd(d)(1)(A)-(B). There is also a civil enforcement provision under 42 U.S.C. sect. 1395(d)(2)(A). This provision provides for a right of civil action against a participating hospital for personal injury damages; there is no mention of a provision for a civil right of action for personal injury damages against physicians.

### Economic Reasons and the Act

Defendants argue that actions in violation of the Act must be said to be motivated by plaintiffs' lack of economic or financial wherewithal. Defendants see this

as an essential element to mount a claim under the Act. The Court does not agree with this position. While it is evident that the background and experiences with hospitals turning away patients because they were unable to pay for needed services led to passage of the Act, the Act does not by its terms limit its application only to indigent persons. The words of this law are not ambiguous, and by its plain meaning, there is no need to reach back into legislative history to discern intent. If Congress intended to make this law applicable only to those unable to pay, it could have said so. It did not, and by the language used throughout the statute's provisions, there is no mention of such reasons as a factor or element for its protection. The Court is not persuaded by the cases defendants cite in support of the view that legislative history has to be called on to determine the intent of Congress in this regard. Rather, the better reasoned view is that found in those cases plaintiffs cite which do not place this requirement on plaintiffs in these cases. *Cleland v. Bronson Health Care Group*, 917 F.2d 266, 270 (6th Cir. 1990); *DeBerry v. Sherman Hosp. Ass'n*, 741 F. Supp. 1302, 1305-1307 (N.D. Ill. 1990). In *Cleland*, the Court said at p. 269:

> The benefits and right of the statutes extend "to any individual" who arrives at the hospital. The ambiguous words do not exist: ("appropriate and stabilize") do not serve to exclude completely any person from coverage of the Act.

There is no basis on this ground to dismiss plaintiff's motion for judgment.

### Physicians and the Act

Statutory construction also applies to the question of whether physicians can be civilly liable for damages under the Act. The position plaintiffs take regarding the civil damage liability of physicians has no basis because there is no intent or provision in the Act that there be such.

As stated before, the Act provides under the heading "Civil Enforcement" a right of action against hospitals

for personal injury damages but does not mention a right to bring such claims against physicians individually.

Section 1395dd(d)(2)(A) of the Act provides:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

It is clear then by the terms of the Act no right of action against physicians is expressly mentioned.[1] Defendants cite a number of cases that say there is no private right of recovery for personal injury damages against physicians in such cases. *See, Verhagen v. Olarte*, 1989 West Law 146265 (S.D. N.Y. Nov. 21, 1989); *Lavignette v. West Jefferson Medical Center*, 1990 West Law 178708 (E.D. La. Nov. 7, 1990); *Sorrells v. Babcock*, 733 F. Supp. 1189 (N.D. Ill. 1990).

Responding, plaintiffs rely chiefly on *Sorrels* (a case defendants distinguish) in support of their position that such right of action under the Act exists. In *Sorrels*, the plaintiff brought suit under the Act against several doctors claiming they failed to medically stabilize her after she presented at a hospital suffering from gastrointestinal bleeding. One of the doctor defendants moved to dismiss in part on the ground that the Act applies only to hospital, not physicians. The Court observed that the Act provides for civil penalties and sanctions against physicians and found support in the Act's legislative history, that there is a federal cause of action under the Act against physicians. The Court said that the federal courts have jurisdiction over physicians in such cases. The *Sorrells* court, however, contrary to plaintiffs' position, stopped short of saying there was a right of action

---

[1] The Act goes on to provide a right of action to a medical facility from financial loss resulting from violation by a participating hospital. See Section 1395dd(2)(B).

for money damages against physicians. In its analysis of the Act's legislative history, the Court stated this about the legislative history:

> The Senate Judiciary Committee noted, however, that damages actions may only be brought against hospitals. H. R. Rep. No. 241 (111), 99th Cong., 1st Sess. 6-7 reported in 1986 U. S. Code Cong. & Admin. News 728, *Sorrells*, 733 F. Supp. at 1194.

It is this Court's view that *Sorrells* only holds that there is a federal cause of action under the Act against physicians for civil fines. *Sorrells*, 733 F. Supp. at 1174. The reliance plaintiffs place on *Sorrells* is therefore misplaced. Plaintiff's reliance on another case, *Thompson v. St. Anne's Hospital*, 716 F. Supp. 8 (N.D. Ill. 1989), is also misplaced but for different reasons. In *Thompson*, the Court denied defendant doctors' motion to dismiss because the motion was made on the ground that the facts alleged did not constitute "patient dumping." The Court ruled that the Act covers dumping as well as denial of stabilizing treatment which the plaintiff had alleged.

Moreover, even if one accepts the plaintiffs' view that *Sorrells* stands for a private right of action against physicians, it is respectfully submitted that this conclusion is not supportable on the basis of legislative history because the conditions of the statutory language do not make such analysis necessary. There is no ambiguity in the Act. The Supreme Court of Virginia has on many occasions stated the conditions under which a resort to extrinsic facts is needed to determine legislative meaning. In *Portsmouth v. Chesapeake*, 205 Va. 259 (1964), the Court said this at page 269:

> We have many times said that where the language of a statute is free from ambiguity, its plain meaning is to be accepted without resort to the rules of interpretation. In that situation, we take the words as written and a resort to extrinsic facts to determine their meaning is not permitted . . . Upon this principle, the

plain meaning of a statute cannot be affected by resort to its legislative history . . . .

*See also, Commonwealth v. Gregory*, 193 Va. 721 (1952); *Cross v. City of Newport News*, 217 Va. 202 (1976).

Congress has expressly provided for a private civil enforcement right against hospitals, but when it did so, it left out any mention of such a right against doctors. It is hard to see in light of an express grant for one how there can be a grant for the other without any mention.

### Negligence Per Se

Lastly, there is the question of whether there is a cause of action for violation of the Act on the basis of negligence *per se*. Plaintiff contends that under Section 8.01-221, violation of any statute like the Act gives rise to a cause of action on negligence *per se* because the statute applies when there is no right of action expressly granted. The Court rejects this position. As mentioned before, when the Act is considered, there is no right of action against doctors because Congress did not provide for one when it otherwise did so expressly against hospitals. There is therefore no basis under a theory of negligence *per se* in light of what appears to be a deliberate omission. The Court does not accept plaintiffs' view that this case like others raises more than one cause of action predicated on the same set of facts -- here patient dumping and medical malpractice. There is only one claim between the two, and that is medical malpractice in diagnosis and treatment. Patient dumping under the Act is not a separate claim under these same facts under negligence *per se*.

### Conclusion

For the foregoing reasons, the defendants' Demurrer is sustained in part and overruled in part.