UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Callins and White
Argued at Salem, Virginia


KEYON DA'MONTA PETTY

v.      Record No. 1217-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DOMINIQUE A. CALLINS
MAY 9, 2023


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Michelle C.F. Derrico, Senior Appellate Attorney (Brett P.
Blobaum, Senior Appellate Attorney; Virginia Indigent Defense
Commission, on briefs), for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


On July 19, 2022, the City of Lynchburg Circuit Court convicted Keyon Da'Monta Petty

of one count of tampering with an automobile in violation of Code § 18.2-146. The trial court

sentenced Petty to twelve months' imprisonment with six months suspended and with twelve

months of good behavior. For the following reasons, we reverse the trial court's judgment and

vacate Petty's conviction.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *McGowan v.*

*Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472

(2018)).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

In September 2020, Ryan Vaughn's car was stolen. Two days after it was reported missing, Lynchburg police officers found the car with significant damage. Detective Jonathan Bragg searched the car and found a right thumbprint on the front of the rearview mirror. Fingerprint analysis showed that the fingerprint belonged to Petty. Based on the position of the thumbprint, the trial court found that Petty adjusted the rearview mirror. The car owner did not testify as to whether the mirror had been adjusted or was otherwise out of place.

In considering whether Petty "tamper[ed] with" the car in violation of Code § 18.2-146, the trial court defined tampering as "taking any action with respect to touching, adjusting, moving, removing any items in a vehicle for which you don't have purpose." The trial court declined to adopt the dictionary definition of "tamper" because "it's [not] all encompassing with respect to what's contemplated by the statute" and, under the dictionary definitions, "the [c]ourt could only find an individual guilty of tampering with . . . if they took some action that was detrimental to the vehicle[,] and I think the legal definition under 18.2-146 is broader than that." The trial court found that adjusting a rearview mirror constitutes tampering with a vehicle and convicted Petty of violating Code § 18.2-146. This appeal follows.

ANALYSIS

In his first two assignments of error, Petty asks us to define the word "tamper" and find that the evidence was insufficient to convict him of tampering with a motor vehicle in violation of Code § 18.2-146. Because we find that the evidence was insufficient, we do not need to specifically define the word "tamper." Still, we address the parties' arguments relating to the first assignment of error because it is necessary to reach the second issue.

I. Assignment of Error I

Although the parties ask us to define "tamper," the Supreme Court has already done so. In *Cox v. Commonwealth*, 220 Va. 22 (1979), the Supreme Court adopted Black's Law Dictionary's

definition of tamper: "to 'interfere improperly' and 'to meddle so as to alter a thing, especially to make corrupting or perverting changes.'" *Cox*, 220 Va. at 25 (quoting *Tamper*, *Black's Law Dictionary* (Rev. 4th ed. 1968)). Petty urges us to use that definition or to adopt Merriam-Webster's definition, which defines tamper as "to interfere so as to weaken or change for the worse." *Tamper*, *Webster's Third New Int'l Dictionary, Unabridged* (2021). The Commonwealth asks this Court to define "tamper" as it relates to the specific statute, proposing that, in Code § 18.2-146, "tamper" refers to "unauthorized physical manipulations of vehicle parts that in some manner impede the lawful driver's safe, intended, or normal operation of the vehicle."

An "improper interference" and "meddl[ing] so as to alter a thing," *Cox*, 220 Va. at 25, requires something more than merely touching that thing. We do not need to consider the requirements of the words "improper" and "meddling" because the evidence does not show that Petty interfered with or altered the mirror. *See Commonwealth v. Swann*, 290 Va. 194, 196 (2015) ("The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

## II. Assignment of Error II

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan*, 72 Va. App. at 521 (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). Instead, "the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v.*

- 3 -

*Commonwealth*, 278 Va. 190, 193 (2009)). This deferential standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *Id.* at 236 (quoting *Bowman v. Commonwealth*, 290 Va. 492, 494 (2015)). It "applies not only to the historical facts themselves, but [also to] the inferences from those facts." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (alteration in original) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 566 (2009) (en banc)).

Still, "[w]hile a factfinder may 'draw reasonable inferences from basic facts to ultimate facts,' the [factfinder's] inferences cannot become so attenuated that they 'push "into the realm of *non sequitur*."'" *Bowman*, 290 Va. at 500 (first quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); and then quoting *Thomas v. Commonwealth*, 48 Va. App. 605, 608 (2006)). Nor may the factfinder arbitrarily adopt an inculpatory interpretation of the facts. *See Case v. Commonwealth*, 63 Va. App. 14, 23 (2014).

The trial court inferred, based solely on the position of Petty's fingerprint on the rearview mirror, that Petty adjusted the mirror. From that inference, the trial court concluded that Petty tampered with the vehicle. But even if we accept the trial court's conclusion that Petty's fingerprint was positioned as if he were adjusting the mirror, the evidence does not show that Petty *did* adjust or otherwise interfere with the mirror. Even though the owner of the car and the police officers who found the car testified at trial, the Commonwealth did not introduce any evidence to suggest that the mirror was out of place. The evidence does not show an interference or an alteration, at least one of which is necessary to show that Petty "improperly interfered" with the mirror or "meddl[ed] [with it] so as to alter" it. *See Cox*, 220 Va. at 25. Without more evidence, a reasonable factfinder could not conclude that Petty tampered with the vehicle unless it arbitrarily adopted an incriminating construction of the facts or resorted to inferences that "push 'into the realm of *non sequitur*.'" *See*

- 4 -

*Bowman*, 290 Va. at 500 (quoting *Thomas*, 48 Va. App. at 608); *Case*, 63 Va. App. at 23. Because the trial court's findings were unsupported by the evidence, we must reverse the judgment.

### III.  Assignment of Error III

After Officer Bragg lifted the fingerprint from the rearview mirror, he sent the fingerprint to the Virginia Department of Forensic Science, where Katie Adolph analyzed the fingerprint. She matched that fingerprint to a fingerprint on a different card bearing Petty's name ("card I"). Lynchburg police officers then arrested Petty and took his fingerprints. Adolph compared those fingerprints to the fingerprint found on the rearview mirror and determined that they matched. After each comparison, Adolph prepared a certificate of analysis. Both certificates were submitted to the trial court and used at trial. Petty argues that the label on card I was hearsay, and thus he argues that both certificates of analysis were completely inadmissible at trial. However, because we find the evidence could not establish that Petty tampered with the vehicle, we need not address this assignment of error.

### CONCLUSION

For the reasons explained above, we reverse the trial court's judgment, vacate the conviction, and dismiss the indictment.

*Reversed and dismissed.*